No.: 24-12819-A

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

KEVIN JOYCE,

Plaintiff-Appellant,

v.

FOREST RIVER, INC., et al.,

Defendants-Appellees.

---

On Appeal from the United States District Court
for the Southern District of Florida
**Case No.: 9:23-cv-81262-RLR**

---

## APPELLANT'S PRINCIPAL BRIEF

/s/ Patrick S. Cousins
Patrick S. Cousins, Esq.
Florida Bar # 845469
*Attorney for Appellant Kevin Joyce*

Cousins Law, APA
250 S. Australian Ave., Suite 1302
West Palm Beach, Florida 33401
Tel: (561) 835-1727
Email: cuzlaw@yourlemon.com

No.: 24-12819-A
*Kevin Joyce v. Forest River, Inc., et al.*

**Certificate of Interested Persons and Corporate Disclosure Statement**

Pursuant to Eleventh Circuit Rule 26.1, counsel for Kevin Joyce certifies that the following may have an interest in the outcome of this appeal:

AndersonGlenn LLP

Cousins, Patrick St. George, Esq.

Cousins Law, APA

Daimler Trucks North America LLC

Forest River, Inc.

Freightliner Custom Chassis Corporation

Glenn, John J., Esq.

Gough, Robert, Esq.

Hill Ward Henderson

Joyce, Kevin

[The Honorable] Oftedal, Richard

[The Honorable] Rosenberg, Robin L.

Williams, James O'Neal, Esq.

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

C-1 of 1

## Statement Regarding Oral Argument

Mr. Joyce respectfully requests oral argument pursuant to Federal Rule of Appellate Procedure 34(a)(1) and Rule 28-1(c) of the Eleventh Circuit Rules. Mr. Joyce's claims involve a novel and complex interpretation of Florida's Lemon Law.

# Table of Contents

Certificate of Interested Persons ........................................................ C-1

Statement Regarding Oral Argument ....................................................... i

Table of Contents ........................................................................ ii

Table of Citations ...................................................................... iii

Statement of Jurisdiction ............................................................... ix

Statement of the Issues .................................................................. 1

Statement of the Case .................................................................... 2

    **I.**    Course of Proceedings ............................................... 2

    **II.**   Statement of Facts .................................................. 3

    **III.**  Standard of Review .................................................. 6

Summary of the Argument .................................................................. 7

Argument ................................................................................. 9

    **I.**    The district court erroneously interprets Chapter 681, Fla. Stat ............... 9

    **II.**   The district court erred in finding no genuine issues of material fact based on the record evidence ................................ 22

    **III.**  The district court erred by deeming Manufacturers' Statement of Material Facts admitted ........................................ 28

Conclusion .............................................................................. 37

Certificate of Compliance .............................................................. 38

Certificate of Service ................................................................. 38

## Table of Citations

_Cases_                                                                                     _Page #_

_Affordable Aerial Photography, Inc. v. Abdelsayed_,
    No. 21-81331-CIV-CANNON/Reinhart, 2022 U.S. Dist. LEXIS 70143 (S.D.
    Fla. Apr. 15, 2022) ............................................................................................ 18

_Atienza v. FCA US LLC_,
    2018 U.S. Dist. LEXIS 208178 (N.D. Cal. Dec. 10, 2018) ............................. 17

_Baez v. Wagner & Hunt, P.A._,
    442 F. Supp. 2d 1273 (S.D. Fla. 2006) ........................................................... 18

_Batista v. Avant Assur. Inc._,
    2023 U.S. Dist. LEXIS 117557 (S.D. Fla. May 22, 2023) ............................... 35

_BMU, Inc. v. Cumulus Media, Inc._,
    366 Fed. Appx. 47 (11th Cir. 2010) ................................................................ 34

_Chmill v. Friendly Ford-Mercury of Janesville, Inc._,
    424 N.W.2d 747 (Wisc. Ct. App. 1988) ......................................................... 32

_Clena Invs. v. Scottsdale Ins. Co._,
    2020 U.S. Dist. LEXIS 231073 (S.D. Fla. Dec. 8, 2020) ................................ 36

_Diguglielmo v. FCA US LLC_,
    2020 Ohio App. LEXIS 1830, at *24 (Ohio Ct. App. 6th Dist. Lucas County
    2020) ................................................................................................................ 23

_DiVigenze v. Chrysler Corp._,
    785 A.2d 37 (N.J. Super. Ct. App. Div. 2001) ............................................... 17

_Feliciano v. City of Miami Beach_,
    707 F.3d 1244 (11th Cir. 2013) ......................................................................... 6

_Fitzpatrick v. Ford Motor Co._,
    680 F. Supp. 3d 1177 (C.D. Cal. 2023) ........................................................... 27

*Ford Motor Co. v. Texas DOT, Motor Vehicle Div.*,
   936 S.W.2d 427 (Tex. Ct. App. 1996)................................................................21

*Francis v. Atlantic Infiniti*, Ltd.,
   64 A.D.3d 747 (2d Dep't 2009)..........................................................................24

*General Motors Corp. v. Dohmann*,
   722 A.2d 1205 (Conn.1998) ..........................................................................9, 20

*Gold Krown Fund, LLC v. Shapiro*,
   2017 U.S. Dist. LEXIS 229363 (S.D. Fla. Dec. 15, 2017)................................36

*Holton v. City of Thomasville School Dist.*,
   490 F.3d 1257 (11th Cir. 2007) ...........................................................................6

*Ibrahim v. Ford Motor Co.*,
   214 Cal. App. 3d 878 (Cal. Ct. App. 1989)......................................................21

*Johnson v. Bd. of Regents of Univ. of Ga.*,
   263 F.3d 1234 (11th Cir. 2001) ............................................................................6

*Joseph v. Napolitano*,
   839 F. Supp. 2d 1324 (S.D. Fla. 2012)..............................................................35

*Kademenos v. Mercedes-Benz of N. Am., Inc.*,
   1999 Ohio App. LEXIS 1523 (Ohio Ct. App. 5th Dist. Richland County
   1999) ...................................................................................................................20

*Levey v. Wells Fargo Bank, N.A.*,
   2015 U.S. Dist. LEXIS 181510 (S.D. Fla. Feb. 17, 2015)................................36

*Medina v. Ford Motor Co.*,
   40 So. 3d 891 (Fla. 5th DCA 2010)...................................................................24

*Milicevic v. Mercedes-Benz USA, LLC*,
   256 F. Supp. 2d 1168 (D. Nev. 2003) ................................................................15

iv

*Mills v. NCL (Bahamas) Ltd.*,
  No. 13-24174-CIV,
  2015 U.S. Dist. LEXIS 194258 (S.D. Fla. Apr. 10, 2015)................................29

*Murray v. Am. Suzuki Motor Corp.*,
  2010 Del. Super. LEXIS 15 (Del. Super., Jan. 25, 2010) ................................20

*Muzzy v. Chevrolet Div., GMC*,
  571 A.2d 609 (Vt. 1989)........................................................................................9

*Nick v. Toyota Motor Sales, U.S.A., Inc.*,
  466 N.W.2d 215 (Wis. App. 1991)....................................................................10

*Oregel v. Am. Isuzu Motors, Inc.*,
  90 Cal. App. 4th 1094 (2001) ..............................................................................9

*Partners Biomedical Sols., LLC v. Saltmans*,
  2021 U.S. Dist. LEXIS 80301 (S.D. Fla. April 27, 2021)................................29

*Reese v. Herbert*,
  527 F.3d 1253 (11th Cir. 2008) ..........................................................................23

*Results Real Estate, Inc. v. Lazy Days R.V. Center, Inc.*,
  505 So. 2d 587 (Fla. 2d DCA 1987)....................................................................9

*Richter v. Monaco Coach Corp.*,
  2009 U.S. Dist. LEXIS 46445 (M.D. Fla. June 2, 2009) ..................................14

*Rives v. Lahood*,
  605 Fed. Appx. 815 (11th Cir. 2015)..................................................................36

*Robertson v. Fleetwood Travel Trailers of Cal., Inc.*,
  144 Cal. App. 4th 785 (2006) ................................................................15, 27, 33

*Roblin v. Newmar Corp.*,
  859 Fed. Appx. 171 (9th Cir. 2021)....................................................................26

v

*Rothermel v. Safari Motor Coaches*,
    1994 U.S. Dist. LEXIS 21591 (N.D. Ohio July 29, 1994)................................26

*Schonscheck v. Paccar, Inc.*,
    661 N.W.2d 476 (Wist. Ct. App. 2003)........................................................ 31-32

*Staple v. Northwestern Mut. Life Ins. Co.*,
    2019 U.S. Dist. LEXIS 41027 (M.D. Fla. Jan. 11, 2019) ..................................36

*Subaru of America, Inc. v. Peters*,
    500 S.E.2d 803 (Va. 1998) ...............................................................................21

*Tuni Gap Enter., LLC v. Marinemax E., Inc.*,
    2022 U.S. Dist. LEXIS 236840 (N.D. Ga. 2022)........................................ 24-25

*United States v. Aldrich*,
    566 F.3d 976 (11th Cir. 2009) ..........................................................................15

*United States v. McLean*,
    802 F.3d 1228 (11th Cir. 2015) ..........................................................................6

*United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave.*,
    363 F.3d 1099 (11th Cir. 2004) .........................................................................23

*United States v. Sutton*,
    302 F.3d 1226 (11th Cir. 2002) .........................................................................26

*Wachovia Bank, N.A. v. United States*,
    455 F.3d 1261 (11th Cir. 2006) .........................................................................13

*Statutes*                                                                     *Page #*

Fla. Stat. § 681.10 et seq. ..........................................................................10

Fla. Stat. § 681.101 .............................................................................16, 20

Fla. Stat. § 681.103 ..................................................................................10

vi

Fla. Stat. § 681.102(9) ..................................................................................10

Fla. Stat. § 681.104(1)(a) ..............................................................................10

Fla. Stat. § 681.104(1)(b) .........................................................................10, 26

Fla. Stat. § 681.104(2)(a) ..............................................................................11

Fla. Stat. § 681.104(3) ...................................................................... 11, 13-17

F.A.C. 2-30.001(2)(b) ....................................................................................12

F.A.C. 2-30.001(2)(c) ....................................................................................12

Fla. Stat. § 681.102(15) ............................................................................12-13

<u>*Rules*</u>                                                                                          <u>*Page #*</u>

Fed. R. Civ. P. 56(a) ......................................................................................6

S.D. Fla. L.R. 56.1(a)(1) ................................................................................28

S.D. Fla. L.R. 56.1(a)(2) ........................................................................... 28-29

S.D. Fla. L.R. 56.1(b)(2) ................................................................................28

S.D. Fla. L.R. 56.1(c) ....................................................................................29

S.D. Fla. L.R. 56.1(d) ....................................................................................29

<u>*Other Authorities*</u>                                                                     <u>*Page #*</u>

*All Moving Services, Inc., and Brown v. Ford Motor Company*,
    2018-0325/FTL (Fla. NMVAB Dec. 26, 2018) ....................................19

*Bruscantini v. Ford Motor Company*,
    2017-0563/MIA (Fla. NMVAB Apr. 5, 2018) .....................................19

*Campbell v. Kia Motors America, Inc.*,
    2018-0106/WPB (Fla. NMVAB Aug. 28, 2018) .................................19

vii

Duane A. Daiker,
*Florida's Motor Vehicle Warranty Enforcement Act: Lemon-Aid For the Consumer*, 45 FLA. L. REV. 253 (1993).................................................................9

*Gobachev v. Tesla Motors, Inc.*,
2020-0117/FTL (Fla. NMVAB Mar. 12, 2021) ...................................................16

Jean Braucher,
*An Informal Resolution Model of Consumer Product Warranty Law*, 1985 WIS. L. REV. 1405 (1985).......................................................................................14

Julie A. Vergeront,
*A Sour Note: A Look at the Minnesota Lemon Law*,
68 MINN. L. REV. 846 (1984)..............................................................................14

Presumption,
Merriam-Webster    Online    Dictionary    (2024),    https://www.merriam-webster.com/dictionary/presumption ...................................................................14

*Quintana v. Toyota Motor Sales, USA, Inc.*,
2017-0495/MIA (Fla. NMVAB Feb. 14, 2018) ...................................................19

*Zumarraga v. American Honda Motor Company*,
2017-0417/MIA (Fla. NMVAB Mar. 20, 2018).................................................19

## **Statement of Jurisdiction**

**(A)** Jurisdiction in the district court was based on removal under 28 U.S.C. § 1441. The basis for removal was pursuant to 15 U.S.C. § 2310(d)(1)(B), remedies in consumer disputes; Mr. Joyce's claim under the Magnuson-Moss Warranty Act supports federal question jurisdiction under 28 U.S.C. § 1331; and further that the parties are diverse with an amount in controversy exceeding the jurisdictional threshold under 28 U.S.C. § 1332.

**(B)** Jurisdiction in the court of appeals is based on 28 U.S.C. § 1291, i.e., a final decision of the district court by an order granting summary judgment against Mr. Joyce.

**(C)** The district court entered final judgment on August 2, 2024, and on August 30, 2024, Mr. Joyce timely filed a notice of appeal.

**(D)** Mr. Joyce appeals from a final judgment in favor of Forest River, Inc. ("Forest River"), and Freightliner Custom Chassis Corp. ("Freightliner") disposing of all parties' claims.

## **Statement of the Issues**

**I.**  Whether the district court erred in interpreting Chapter 681 to require Mr. Joyce to establish a presumption under § 681.104(3), Fla. Stat.

**II.**  Whether the district court erred in finding no genuine issues of material fact based on the record evidence.

**III.**  Whether the district court erred in deeming Manufacturers' Statement of Material Facts admitted.

## Statement of the Case[1]

### I.    Course of Proceedings

On September 13, 2023, Forest River removed this action to the district court, [Doc 1], wherein Mr. Joyce appealed an arbitrator's decision seeking review of his lemon law case by trial *de novo* against Forest River and Freightliner ("manufacturers") and added a claim under the Magnuson-Moss Warranty Act against Freightliner, filing an amended complaint in November 2023. [Doc 28].

Subsequently, manufacturers moved for summary judgment. [Doc 53, 57]. Mr. Joyce filed separate responses to manufacturers' motions for summary judgment, [Doc 63, 64], and a single opposing Statement of Material Facts ("SOMF"), including pinpoint references, that did not correspond with the separate order and paragraph format used by each manufacturer and did not use the words "disputed" or "undisputed," [Doc 67]. On June 24, 2024, Forest River moved for an extension to reply, [Doc 69], while Freightliner filed a reply to Mr. Joyce's response, [Doc 70]. Freightliner did not file a reply to Mr. Joyce's SOMF. On July 8, 2024, Forest River filed its replies to Mr. Joyce's SOMF, [Doc 73], and Mr. Joyce's response, [Doc 75].

---

[1] Per 11th Cir. R. 28-5, the reference format used is: document number and page number, i.e., "Doc # - Pg #".

On July 10, 2024, Mr. Joyce filed an amended SOMF as to Forest River. [Doc 78]. Two weeks later, the district court granted summary judgment in favor of manufacturers, [Doc 83], and entered final judgment [Doc 85].

## II.    Statement of Facts

In June 2020, Mr. Joyce purchased a 2020 Forest River Berkshire 34 QS Class A motor home ("RV") from Lazy Days, FL [an authorized Forest River dealer]. [Doc 28 - Pg 14-18]. Mr. Joyce planned to use the RV for traveling, visiting family, and vacationing during lull time after the pandemic. [Doc 55-1 – Pg. 17, 93].

Prior to purchasing the RV, Mr. Joyce noticed problems with the steering wheel and back-up camera. [Doc 58-2 – Pg. 37-38, 139-40]. Mr. Joyce did not want to take delivery of the RV but was informed by Lazy Days that everything was covered under warranty and would be fixed later. [Doc 28 – Pg. 38, 45-47]. Relying on the assurances, Mr. Joyce drove the RV on a scheduled trip to Boston, MA. [Doc 58-2 – Pg. 49]. During the trip, the RV experienced various issues, including the steering wheel, check engine light turning on, low coolant, air conditioning, and head lights not working. [Doc 58-2 – Pg. 50]. Hazardously, compartments kept "flying open" while the RV was being driven, requiring Mr. Joyce to make unnecessary stops. [Doc. 58-2 – Pg. 19-20]. Upon arrival, Forest River arranged for someone to work on the RV at Mr. Joyce's residence to make it drivable, [Doc 58-2 – Pg. 20-

21], and advised Mr. Joyce to bring the RV to Camping World in Chichester, NH [authorized Forest River repair facility, [Doc 28 – Pg. 53]. From mid-July 2020, the RV remained at Camping World. [Doc 58-2 – Pg. 51, 62-63].

Between June to September 2020, Mr. Joyce complained to Forest River about a multitude of conditions and defects including the steering wheel, [Doc 58-2 – Pg. 39]; back-up camera, [Doc 58-2 – Pg. 74]; check engine light, [Doc 58-2 – Pg. 52, 90, 114]; overheating and low coolant, [Doc 58-2 – Pg. 20]; intermittent air conditioning, [Doc 58-2 – Pg. 116]; head lights, [Doc 58-2 – Pg. 49, 115]; hot water, [Doc 58-2 – Pg. 50]; detached microwave falling, [Doc 58-2 – Pg. 168]; back access gate not locking, [Doc 58-2 – Pg. 80]; slides and compartments not shutting properly, [Doc 58-2 – Pg. 50, 84]; windshield leaking, [Doc 58-2 – Pg. 51, 115]; roof leaking [Doc 58-2 – Pg. 52, 85]; water coming out of bedroom lights, [Doc 58-2 – Pg. 83]; smiley face on monitor screen, [Doc 58-2 – Pg. 74]; and rear engine door open in transit, [Doc 58-2 – Pg. 219]. [Doc 58-2 – Pg. 218-27]. Despite the issues, Mr. Joyce was repeatedly assured not to worry because everything was under warranty and would be fixed. [Doc 58-2 – Pg. 38, 46, 54-55, 73, 97-98]. Consequently, Forest River directed Mr. Joyce to drive the RV back to Lazy Days so efforts could be coordinated with Freightliner to address the problems. [Doc 58-2 – Pg. 51, 77, 86].

4

In September 2020, Mr. Joyce took the RV back to Lazy Days. [Doc 58-2 – Pg. 183]. The RV remained in Lazy Days' possession until November 4, 2020, when Lazy Days presented the RV to Freightliner for work. [Doc 58-2 – Pg. 184-85]. At this point, Mr. Joyce believed Forest River was going to winterize the RV, taking it to Indiana to "fix all the problems". [Doc 58-2 – Pg. 90, 96-97]. In early December 2021, Forest River informed Mr. Joyce the RV was ready to be transferred to the factory to work on the issues. [Doc. 58-2 – Pg. 100]. However, Forest River then stopped communicating with Mr. Joyce. [Doc. 58-2 – Pg. 101].

In February 2022, Mr. Joyce sent Forest River and Freightliner written notification of the RV's conditions and defects to allow an opportunity to inspect or repair. [Doc 58-3]. The RV remained in Lazy Days' possession for over two months for repair attempts. [Doc 58-2 – Pg. 90-91]. On March 3, 2022, and again on April 21, 2022, Lazy Days gave the RV to Freightliner to address the problems. [Doc 58-2 – Pg. 69, 162, 190-91]. Unbeknownst to Mr. Joyce who was waiting for repairs, the RV was at Lazy Days. [Doc 58-2 – Pg. 92, 96].

Although serviced, most of the problems, including the check engine light, windshield leak, back-up camera, left headlight, steering wheel, slide out failing to latch, etc., persisted, prompting Mr. Joyce to seek a refund. [Doc 48 – Pg. 15].

5

### III.    Standard of Review

The district court's grant of summary judgment is reviewed *de novo* and the same standards that governed the district court apply, *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1242 (11th Cir. 2001), viewing all facts and reasonable inferences in the light most favorable to the non-movant, *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013). Summary judgment is proper when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The district court's interpretation of a statute and the application of law is also reviewed *de novo*. *Holton v. City of Thomasville School Dist.*, 490 F.3d 1257, 161 (11th Cir. 2007).

The district court's application of its local rules is reviewed for an abuse of discretion and great deference is given to the district court's interpretation of its own rules. *United States v. McLean*, 802 F.3d 1228, 1233 (11th Cir. 2015). A district court abuses its discretion when it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures, or makes clearly erroneous factual findings. *Id.*

## Summary of the Argument

The district court's hyper technical construction of Florida's Lemon Law statute has, in this case and potentially future cases, led to an erroneous result which is contrary to both the text and the spirit of the law penalizing the consumer. In that regard, the district court misconstrued the statutory *presumptions* contained in § 681.104(3), Florida Statutes, as *mandatory* requisites to relief. This single interpretive error infects the order on appeal in multiple ways. First, the district court applied an improper legal burden on Mr. Joyce in granting summary judgment. Second, the district court failed to review the summary judgment evidence for factual issues pertaining to the RV's status as a "lemon" *outside* of the presumptions.

As indicated herein, both the plain language of the statute and the decisional authority in our and sister districts plainly establish that the aforementioned presumptions are simply *one method* of establishing a Lemon Law claim. The order granting summary judgment is specifically predicated on the improper reading of § 681.104(3) which would require Mr. Joyce to prove a presumption, in order to obtain relief. While Mr. Joyce accepts that the summary judgment record does not support application of either of the statutory presumptions; the district court also erred in finding this fact conclusively ended the inquiry as to Lemon Law liability.

7

Applying a correct legal standard – which examines the presumptions as an evidentiary means to prove the "lemon" status of the RV, rather than the sole and exclusive method of proof – to the summary judgment proof, the district court also erred in concluding that no genuine issues of material fact precluded the entry of judgment. Specifically, from the summary judgment evidence, a reasonable jury could find that Mr. Joyce did not get a vehicle which "conforms to warranty", *even without application of the statutory presumption* toward this fact.

Finally, on a procedural issue: the district court abused its discretion by treating the manufacturers' SOMF as "undisputed" due to *technical defects* in Mr. Joyce's response, which caused no prejudice and were corrected by Mr. Joyce prior to the ruling on the motion for summary judgment. This error likewise provides independent grounds for relief, regardless of the substantive issues addressed above.

Overall, the district court's order, and implicit reasoning, is irreconcilable to and inharmonious with the language and policy of the remedial consumer protection statute that is the Lemon Law. Accordingly, the district court's order should be reversed.

<u>**Argument**</u>

**I.    The district court erroneously interprets Chapter 681, Fla. Stat. requiring Mr. Joyce to establish a presumption under § 681.104(3), Fla. Stat.**

In the 1980s, many states began to implement automobile warranty enforcement acts, also known as 'lemon laws,' to aid consumers in protecting their rights under their warranties. Duane A. Daiker, *Florida's Motor Vehicle Warranty Enforcement Act: Lemon-Aid For the Consumer*, 45 FLA. L. REV. 253, 254 (1993). These lemon laws were consumer oriented and eliminated many of the burdens of enforcing warranties under existing law. *Id.* Significantly, lemon laws are a remedial measure to protect consumers and place reasonable limits on what they must tolerate when purchasing a new vehicle that had a major defect or was in constant need of repair and should be given a construction consistent with that purpose. *See Results Real Estate, Inc. v. Lazy Days R.V. Center, Inc.*, 505 So. 2d 587, 588 (Fla. 2d DCA 1987); *see also Oregel v. Am. Isuzu Motors, Inc.*, 90 Cal. App. 4th 1094, 1103 (2001).

As such, the lemon law should be read broadly in favor of consumers the law was designed to protect, *Cf. General Motors Corp. v. Dohmann*, 722 A.2d 1205, 1214 (Conn. 1998), and is entitled to a liberal construction in favor of those who are the intended beneficiaries of the legislation. *Cf. Muzzy v. Chevrolet Div., GMC*, 571 A.2d 609, 614 (Vt. 1989). "Remedial statutes should be liberally construed to

9

suppress the mischief and advance the remedy that the statute intended to afford."
*Nick v. Toyota Motor Sales, U.S.A., Inc.*, 466 N.W.2d 215, 218 (Wis. App. 1991).

Specifically, Florida's Motor Vehicle Warranty Enforcement Act ("the Act" or "Florida's Lemon Law"), Fla. Stat. § 681.10 et seq., provides that if a vehicle does not conform to an express warranty and the consumer first reports the problem to the manufacturer within the Lemon Law rights period, or 24 months after delivery of the vehicle, the manufacturer must make all repairs, at no cost to the consumer, as are necessary to conform the vehicle to the warranty, irrespective of whether such repairs are made after expiration of the Lemon Law rights period. § 681.103, Fla. Stat.; § 681.102(9) (defining "Lemon Law rights period").

Florida's Lemon Law provides a consumer with multiple routes in seeking a remedy. As one option, after three attempts to repair the nonconformity, the consumer is required to give the manufacturer written notification of the need to repair the nonconformity and a final opportunity to cure it. § 681.104(1)(a), Fla. Stat. The manufacturer must respond and give the consumer the opportunity to have the vehicle repaired. *Id.* Alternatively, if the motor vehicle is out of service by reason of repair of one or more nonconformities by the manufacturer or its authorized service agent for a cumulative of 15 or more days, the consumer shall notify the manufacturer in writing to give an opportunity to inspect or repair. § 681.104(1)(b).

10

Moreover, the substantive remedy provision states, if the manufacturer or service agent cannot conform the motor vehicle to the warranty by repairing or correcting *any nonconformity after a reasonable number of attempts*, it must repurchase the motor vehicle and refund the full purchase price to the consumer or provide the consumer with an acceptable replacement vehicle. § 681.104(2)(a) (emphasis added) (providing further that "the consumer has an unconditional right to choose a refund rather than a replacement"). Thus, a consumer's eligibility for recovery hinges on whether the manufacturer was unable to repair the vehicle after a reasonable number of attempts. *Id.*

To establish that a reasonable number of attempts have occurred, the consumer *may* avail himself of the "repair" and "days-out-of-service" *presumptions* set forth in § 681.104(3), which provide as follows:

(a) The same nonconformity has been subject to repair at least three times by the manufacturer or its authorized service agent, plus a final attempt by the manufacturer to repair the motor vehicle if undertaken as provided for in paragraph (1)(a), and such nonconformity continues to exist; or

(b) The motor vehicle has been out of service by reason of repair of one or more nonconformities by the manufacturer, or its authorized service agent, for a cumulative total of . . . 60 or more days in the case of a recreational vehicle, . . .. The manufacturer or its authorized service agent must have had at least one opportunity to inspect or repair the vehicle following receipt of the notification as provided in paragraph (1)(b).

§ 681.104(3), Fla. Stat.

11

For the purposes of Chapter 681, the following definitions apply:

"Repair attempt" means:

> "The replacement of a component, or some adjustment made, to correct a nonconformity. An examination of a reported nonconformity, without a subsequent adjustment or component replacement, may constitute a repair attempt if it is later shown that repair work was justified. Examination or repair performed by anyone other than the manufacturer or its authorized service agent will not be considered a repair attempt."

> F.A.C. 2-30.001(2)(b).

"Out-of-service-day" means:

> "Any day, including weekends and holidays, when the motor vehicle is left at an authorized service agent or manufacturer's designated repair facility for an examination or repair of one or more nonconformities. The number of out-of-service days for each visit commences the day the vehicle is brought into the repair facility for that repair work and ends the day the work is completed. If the vehicle is left at an authorized service agent for the performance of routine maintenance, repairs of minor defects, or repairs of defects first reported after the expiration of the Lemon Law Rights period, such days will not be considered out-of-service days."

> *Id.* at (2)(c).

"'Nonconformity'" means a defect or condition that substantially impairs the use, value, or safety of a motor vehicle, but does not include a defect or condition that results from an accident, abuse, neglect, modification, or alteration of the motor vehicle by persons other than the manufacturer or its authorized service agent. § 681.102(15), Fla. Stat.

12

Although § 681.104(3) is intended to aid consumer-plaintiffs, like Mr. Joyce, the manufacturers and district court attempt to subvert it to create a [manufacturer's] defense, inflicting superfluous constraints because the facts of this case do not establish the statutory presumption. [Doc 83 – Pg. 6-8].

Specifically, the district court indicates that the RV "*must have a recurring or serious* nonconformity. [Doc 83 – Pg. 2]. Curiously, no such language is found in the definitions of Florida's Lemon Law. *See* § 681.102(15), Fla. Stat. (defining nonconformity without use of "recurring" or "serious").

Additionally, and contrary to the Lemon Law's plain text, the district court improperly required Mr. Joyce to prove one of the presumptions under § 681.104(3). [Doc 83 – Pg. 7-8]. A straightforward, common sense reading of § 681.104 displays the flaw in that interpretation. *See Wachovia Bank, N.A. v. United States*, 455 F.3d 1261, 1267 (11th Cir. 2006) ("The first step of statutory construction is to determine whether the language of the statute, when considered in context, is plain.").

Although Chapter 681 gives tangible meaning, by two separate presumptions, to the phrase "reasonable number of attempts", a consumer is *not required* to prove either the "repair attempt" or "days-out-of-service" presumption. Construing these two presumptions together with the substantive remedy provision, it is obvious that

13

§ 681.104(3) simply quantifies the minimum that presumptively amounts to a reasonable number of repair attempts.

Simply stated, "presumptions" are not elements or even minimum requirements. *See* Presumption, Merriam-Webster Online Dictionary (2024), https://www.merriam-webster.com/dictionary/presumption (last visited October 21, 2024) (defining presumption as "an inference as to the existence of a fact not certainly known that the law requires to be drawn from the known or proven existence of some other fact"). Indeed, one commentator has warned of the potential "danger that the presumptive reasonable number of attempts set in the lemon laws will become a minimum that the consumer will have to allow before the consumer will be permitted refund or replacement under a lemon law." Jean Braucher, *An Informal Resolution Model of Consumer Product Warranty Law*, 1985 WIS. L. REV. 1405, 1438 n.193 (1985) (citing Julie A. Vergeront, *A Sour Note: A Look at the Minnesota Lemon Law*, 68 MINN. L. REV. 846 (1984)).

These specific presumptions are rebuttable and only available under certain distinct scenarios, namely whether there are multiple attempts to repair the same defect or whether the vehicle as a whole is out of service for repairs for a period of time. *See Richter v. Monaco Coach Corp.*, 2009 U.S. Dist. LEXIS 46445, at *7-8 (M.D. Fla. June 2, 2009). In other words, a consumer may (but is not required to)

14

meet his burden of producing evidence of the manufacturer's inability to repair within a reasonable time by providing evidence that the nonconformity or nonconformities continue to exist after the specified number of repairs or time out of service. But the presumptions can apply against a manufacturer only if the consumer has advised the manufacturer that it has one final opportunity to repair.

This is also consistent with purpose of the Act; had the statute been intended to require consumers to prove the § 681.104(3) presumptions, the language would be decidedly different. If the Legislature intended to condition recovery on only establishing one of the presumptions, it easily could have said so [either in the substantive remedy provision or as an affirmative defense]. *See, e.g.*, *United States v. Aldrich*, 566 F.3d 976, 978 (11th Cir. 2009) ("The 'cardinal canon' of statutory interpretation is that 'courts must presume that a legislature says in a statute what it means and means in a statute what it says there.'"). Not only is this the case, but the district court was required to apply this rule of interpretation to Section 681.104(3). Belying the presumptions is that under some circumstances a single attempt, or no attempt, at all, can be a reasonable number. *See Milicevic v. Mercedes-Benz USA, LLC*, 256 F. Supp. 2d 1168, 1175-76 (D. Nev. 2003); *see also Robertson v. Fleetwood Travel Trailers of Cal., Inc.*, 144 Cal. App. 4th 785, 803 (2006) ("breach of obligations arising under the Song-Beverly Act may arise under many diverse

15

situations"); *Gobachev v. Tesla Motors, Inc.*, 2020-0117/FTL (Fla. NMVAB Mar. 12, 2021) (finding reasonable number of attempts where vehicle was presented for repair one time prior to written notification).

The history of the statute also fails to support the district court's interpretation. The Legislature's intent behind Florida's Lemon Law "recognizes that a motor vehicle is a major consumer purchase and that a defective motor vehicle undoubtedly creates a hardship for the consumer." § 681.101, Fla. Stat. The three-fold statutory intent is to require the manufacturer to make warranted repairs within a specific time frame, to establish expeditious dispute resolution procedures, and to provide remedies for the failure to repair substantial defects or conditions. *See id.*

In fact, the Legislature expressly declined to require that the consumer "establish the presumption of a reasonable number of [repair] attempts as to each manufacturer that provides a warranty directly to the consumer." § 681.101, Fla. Stat. ("it is not the intent of the Legislature that a consumer establish the presumption of a reasonable number of attempts as to each manufacturer that provides a warranty directly to the consumer."). Nothing in Florida's Lemon Law *requires* that a consumer be able to satisfy either subsection of § 681.104(3) to succeed on a claim for relief; rather, the consumer must be able to meet the burden under § 681.1095(8)

16

of establishing that "a reasonable number of attempts have been undertaken to correct a nonconformity or nonconformities."

Although the presumptions of § 681.104(3) may assist the consumer in proving his case where applicable, they are not the *only* means by which the consumer can show that a reasonable number of repair attempts were undertaken. *See DiVigenze v. Chrysler Corp.*, 785 A.2d 37 (N.J. Super. Ct. App. Div. 2001) (motor vehicle lessee did not rely on presumption that failure to repair her vehicle after three attempts was evidence that manufacturer failed to repair the defects within a reasonable time, when lessee brough Lemon Law claim against manufacturer, and thus lessee was not required to send "last chance" letter or to establish that the defects continued to exist); *see also Atienza v. FCA US LLC*, 2018 U.S. Dist. LEXIS 208178, at *10 (N.D. Cal. Dec. 10, 2018) ("Given both the language of the statutes and the legislative intent, it cannot be that a claim is foreclosed as a matter of law when a consumer makes multiple repair visits, each for a different defect…FCA cannot convert a presumption in favor of plaintiffs into a bar that Atienza must meet in order to survive summary judgment.").

In the instant action, the district court erroneously imposes a disturbing and unnecessary limitation on Mr. Joyce contravening Chapter 681's legislative intent, express language, and implied spirit of the *consumer protection* statute. In doing so,

17

the district court violated well-settled rules of statutory interpretation, which prohibit a court from adding elements not specifically set forth therein. *See, e.g.*, *Affordable Aerial Photography, Inc. v. Abdelsayed*, No. 21-81331-CIV-CANNON/Reinhart, 2022 U.S. Dist. LEXIS 70143, at *16 (S.D. Fla. Apr. 15, 2022) ("Courts have no authority to alter statutory language. Courts cannot add to the terms of a provision what Congress left out."); *Baez v. Wagner & Hunt, P.A.*, 442 F. Supp. 2d 1273, 1276-77 (S.D. Fla. 2006) ("Absent sufficient indications to the contrary, a court should refrain from inserting language into a statute, even if it suspects that Congress inadvertently omitted such language.").

Specifically, the district court states: "Plaintiff has failed to carry his burden of proof establishing the statutory presumption for when a refund or replacement is available to a consumer." [Doc 83 – Pg. 7 (as to Forest River); Doc 83 - Pg 8 (as to Freightliner)]. To this point, the district court misinterprets the statute as providing relief *only* where "the minimum four occasions for the same nonconformity required by the statutory presumption." *Id.* Further, by mandating Mr. Joyce to "provide a calculation how many out-of-service days the RV sustained for covered nonconformities", the district court engrafts upon the statute additional requirements that the Legislature did not deign to include. To permit such would be the equivalent

18

of reading into the statute an intent of variance with the plain words and not present by necessary implication.

Section 681.104 eases the burden of establishing a *prima facie* case in limiting proof and narrowing issues to be determined; however, Florida's Lemon Law does not require these presumptions as a prerequisite for every claim as evidence by a litany of arbitration cases. *See, e.g.*, *Zumarraga v. American Honda Motor Company*, 2017-0417/MIA (Fla. NMVAB Mar. 20, 2018) ("a consumer is not required to prove the elements of the statutory presumption"); *Quintana v. Toyota Motor Sales, USA, Inc.*, 2017-0495/MIA (Fla. NMVAB Feb. 14, 2018) ("The Lemon Law does not specifically define how many attempts are required before it can be concluded that a manufacturer has had a reasonable number."); *Bruscantini v. Ford Motor Company*, 2017-0563/MIA (Fla. NMVAB Apr. 5, 2018) ("Nor is a consumer required to prove the elements of the statutory presumption [] to qualify for relief under the Lemon Law."); *Campbell v. Kia Motors America, Inc.*, 2018-0106/WPB (Fla. NMVAB Aug. 28, 2018) (same); *All Moving Services, Inc., and Brown v. Ford Motor Company*, 2018-0325/FTL (Fla. NMVAB Dec. 26, 2018) (finding reasonable number of attempts where knocking noise engine was subject to repairs two times). Reviewing these arbitration summaries confirms Florida's Lemon Law does not specifically define how many attempts are required. Nothing in the legislative

19

scheme reflects an intent that every Lemon Law case is a presumption case; in fact, § 681.101 provides expressly to the contrary of that notion.

The district court's interpretation of the interplay between the requirement of a reasonable number of repair attempts and the presumptions created by the statute is inconsistent with how other states have interpreted similar provisions in their lemon laws, as well. Since there is a paucity of appellate case law on the issue, Mr. Joyce extrapolates from other state cases which interpret analogous provisions. *See, e.g.*, *Murray v. Am. Suzuki Motor Corp.*, 2010 Del. Super. LEXIS 15 (Del. Super., Jan. 25, 2010) (concluding owner could establish that manufacturer had been afforded a reasonable number of repair attempts through presumptions or with other evidence and a question of fact for trial); *Kademenos v. Mercedes-Benz of N. Am., Inc.*, 1999 Ohio App. LEXIS 1523 (Ohio Ct. App. 5th Dist. Richland County 1999) (finding lower court erred when interpreted similar section as a burden of proof that purchaser must meet and remanding with directions to address statutory provision as a presumption, rather than a required element of proof). Notwithstanding the imposition of the § 681.104 presumptions, other jurisdictions, examining similar lemon laws, have also concluded that a sufficient number of repair attempts does not need to meet the presumption. *See, e.g.*, *Dohmann*, 722 A.2d at 1205 (affirming fact finder's conclusion that purchaser's allowing of only one attempt at correcting

20

vehicle's paint defect was enough to constitute a "reasonable number of attempts" under Connecticut Lemon Law statute containing a similar presumption); *Subaru of America, Inc. v. Peters*, 500 S.E.2d 803 (Va. 1998) (rejecting Subaru's nearly identical interpretation made by manufacturers in this case and stating: "The case was not submitted to the jury on the presumption…The evidence was sufficient to allow the jury to find, without the benefit of the presumption, that the defendant or its agents were afforded a reasonable number of attempts to conform the vehicle…."); *Ford Motor Co. v. Texas DOT, Motor Vehicle Div.*, 936 S.W.2d 427, 432 (Tex. Ct. App. 1996) ("The existence of statutory presumptions does not forbid the agency from finding different circumstances or fewer attempts meet the requisite 'reasonable number of attempts."); *Ibrahim v. Ford Motor Co.*, 214 Cal. App. 3d 878, 886 (Cal. Ct. App. 1989) ("[I]ssue of whether the manufacturer has made a reasonable number of attempts to conform the product to the warranty remains to be resolved. Unreasonableness may still be found even if a new vehicle has been out of service for less than 30 days or if there have been fewer than four attempts to repair the same problem. By enacting subdivision (e) the Legislature has not decreed a per se, valid-in-all circumstances, money-back guarantee for every purchaser whose new automobile has spent 30 days at the dealership for repairs, or who has suffered

through four attempts to fix a problem; these are only markers on the path of reasonableness that the trier of fact must trod.").

There is no evidence in the record that the RV has remained defect free after these repair attempts. [Doc 48 – Pg. 15]. The public policy behind the Lemon Law is to provide recourse to purchasers of new vehicles who experience mechanical problems which cannot be remedied after repeated attempts or which cause the vehicle to be out of service by reason of repair for an inordinate amount of time. Most compelling is record evidence that Mr. Joyce did not get the RV he bargained for, combined with the fact that the RV was presented not only with nonconformities, but in the aggregate, received a RV that continues to have a multitude of problems the average, reasonable buyer would not, and should not, expect to experience in a new vehicle. When paying that much for an RV, the consumer has a right to one that is unblemished.

## II.    The district court erred in finding no genuine issues of material fact based on the record evidence.

Because Chapter 681 was improperly interpreted (as *requiring* Mr. Joyce to establish a statutory presumption), the district court erred in determining there was no genuine issues of material fact.

Before granting summary judgment, the district court also "must ensure that the motion itself is supported by evidentiary materials" by "review[ing] the movant's

22

citations to the record to determine if there is, indeed, no genuine issue of material fact." *Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008). In doing so, the court must review evidence on file even if uncited. *See United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave.*, 363 F.3d 1099, 1101 (11th Cir. 2004).

The district court solely focuses on the facts with respect to satisfying the presumptions under § 681.104(3), Fla. Stat., eliminating consideration of the totality of the circumstances regarding the RV' nonconformity. [Doc 83 – Pg. 7-8]. The record reveals the following questions of fact which are not appropriate for resolution on summary judgment:

Mr. Joyce testified at length on the various defects and conditions that he had with the RV. [Doc 58-2 – Pg. 89/lines 5-11 ("There were too many issues."); Doc 58-2 P 98/lines 15-16 ("[T]here was like twenty problems with the RV at that point."; Doc 58-2 – Pg. 109/lines 10-17 ("[T]old it was going to be fixed. It wasn't fixed.")]. These were not mere automotive problems accredited to normal usage. Under the statute, Mr. Joyce is not required to eliminate all possible causes of the problem. *See Diguglielmo v. FCA US LLC*, 2020 Ohio App. LEXIS 1830, at *24 (Ohio Ct. App. 6th Dist. Lucas County 2020) ("Hincher's inability to specifically identify the defective part is insufficient to demonstrate that a genuine issue of material fact does not exist"). Mr. Joyce also testified that the RV had been out of service for repair, or

23

at least provided manufacturers with the opportunity, basically for the duration of his ownership with exception of four or five weeks that the RV was in his possession. [Doc 58-2 – Pg. 119-20], and the issues continued to occur, [Doc 58-2 – Pg. 80-86]. For the intended purpose of the purchase, Mr. Joyce gained no value. [Doc 58-2 – Pg. 35/lines 14-15 ("[T]he value to me is zero. I wouldn't have paid anything for the RV")]. The manufacturers did not offer any evidence to contradict these points, nor do the manufacturers contest any of the conditions or defects exist. Nothing in the Lemon Law necessitates Mr. Joyce present expert testimony as to the RV's failure to perform properly or market-based evidence to show decreased value; competent evidence has been presented and should have been considered that the RV failed to conform to warranty and when the RV was presented for repair under warranty, the RV was not repaired, [Doc 58-2 – Pg. 212 (even if minor repairs, the repairs were ongoing with no end)] and thus not fit for the ordinary purpose for which an RV is used. *See Francis v. Atlantic Infiniti*, Ltd., 64 A.D.3d 747 (2d Dep't 2009) (accepting consumer's affidavit and manufacturer's work orders indicating vehicle was out of service for 44 days as a result of repairs). Even so, such requires a question of fact as to what weight, if any, to give the evidence – which is left for the jury's determination. *See Medina v. Ford Motor Co.*, 40 So. 3d 891 (Fla. 5th DCA 2010); *see also Tuni Gap Enter., LLC v. Marinemax E., Inc.*, 2022 U.S. Dist. LEXIS

24

236840, at *23 (N.D. Ga. 2022) ("Nonconformity is generally a question of fact for a jury."). At minimum, a reasonable inference from the record can be made that a defect or condition with the RV was due to parts covered under warranty and that the defects and conditions substantially impaired the value of the RV to Mr. Joyce.

Although not required to, Mr. Joyce retained and provided an expert who: (a) identifies which nonconformities persisted and were serviced by the manufacturers, [Doc 48 – Pg. 5 (attributing defects to Forest River for: check engine light with active fault codes, leaking windshield, backup camera screen intermittent in operation, blind spot, turn signal, changing camera view intermittent in operation, left headlamp inoperative, and steering wheel clock position incorrect while driving; and to Freightliner for the check engine light)]; and (b) calculates how many out-of-service days the RV sustained for nonconformities, [Doc 48 – Pg. 5-6 (detailing RV was out of service for: 56 days reflected by Work Order Number 87613; 3 days reflected by Work Order Number 12309833; and 22 days reflected by Claim Number 764837, for a cumulative total of at least 81 days all attributable to Forest River; for 46 days when Lazy Days presented to Freightliner; for 164 days by the time the RV returned from Indiana; and for approximately 311 days from June 15, 2020 to April 25, 2022)]. Even still, the district court finds the RV was out of service for more than 15 days. [Doc 83 – Pg. 4-5 (finding that the RV was at Lazy Days from September

25

10, 2020, until November 4, 2020)]. This fact in conjunction with Mr. Joyce's notice, [Doc 58-3], satisfies the RV's failure to conform to warranty under § 681.104(1)(b).

Again, the Lemon Law does not impose an increased burden on Mr. Joyce to isolate days covered for nonconformities and definitively establish that the RV was out of service for 60 days as to *each* manufacturer as the district court orders. Section 681.104, Fla. Stat. makes Forest River responsible for conforming the RV to Freightliner's express warranties, not simply its own. *See Roblin v. Newmar Corp.*, 859 Fed. Appx. 171, 171-72 (9th Cir. 2021) ("The district court correctly held that the statute made Newmar responsible for conforming the vehicle to Freightliner's express warranties, not simply its own."); *see also Rothermel v. Safari Motor Coaches*, 1994 U.S. Dist. LEXIS 21591, at *7-8 (N.D. Ohio July 29, 1994) ("[T]he lemon law clearly contemplates that "the manufacturer, its agent, or its authorized dealer" will repair or refund the purchase price of a nonconforming motor vehicle. Under this language the remedy is to be provided by a single entity."). The statute's use of the definite article "the" indicates something specific. *See United States v. Sutton*, 302 F.3d 1226, 1227 (11th Cir. 2002) (discussing the difference between use of the word "the" instead of "any"). Forest River is "the manufacturer" of the RV, and as such is responsible for conforming the RV to "the warranty"—not simply the specific parts it made. If the Legislature intended simply to prevent a manufacturer

26

from disclaiming its own warranty, it surely could have said so more directly. The district court forces the consumer Mr. Joyce to pursue piecemeal relief against each individual component manufacturer.

Assuming Mr. Joyce is required to establish a presumption, Mr. Joyce's expert highlights questions of fact about whether the RV was out of service by reason of repair of one or more defect or condition under the "out-of-service" presumption and whether, under the "repair attempt" presumption, the repairs to the RV were for the same defect or condition and continued to exist. Mr. Joyce qualifies under either basis. The RV was out for warranty repairs for more than 60 days and at least four attempts were made to repair or correct the defects and conditions, including the check engine light.

Based on the foregoing, when viewed in light most favorable to Mr. Joyce the record evidence creates disputed issues of material fact as to whether manufacturers conformed the RV to the warranty by repairing or correcting *any nonconformity after a reasonable number of attempts*; thus, precluding summary judgment. *See Fitzpatrick v. Ford Motor Co.*, 680 F. Supp. 3d 1177, 1188 (C.D. Cal. 2023) (citing *Robertson*, 144 Cal. App. 4th at 803) ("The reasonableness of the number of repair attempts is a question of fact to be determined in light of the circumstances, but at a minimum there must be more than one opportunity to fix the nonconformity.").

27

Specifically, the evidence reflects factual disagreements as to a nonconformity or nonconformities that substantially impaired the use, value, or safety of the RV; reasonable number of repair attempts; and number of days the RV was out of service.

Undeniably, too many unresolved factual questions remain, and reasonable minds could come to different conclusions on these issues. The district court without discussion or authority improperly weighed conflicting evidence and made credibility determinations rather than construing the facts in Mr. Joyce's favor. In short, the district court gives no deference to the fact finder by accounting for the myriad of circumstances that arise when a consumer has problems with a new vehicle.

### III.    The district court erred by deeming Manufacturers' Statement of Material Facts admitted.

Pursuant to Local Rule 56.1(a)(1), "[a] motion for summary judgment and the opposition to it shall [] be accompanied by a separate and contemporaneously filed and served Statement of Material Facts." S.D. Fla. L.R. 56.1(a)(1) (alterations added). "An opponent's Statement of Material Facts shall clearly challenge any purportedly material facts asserted by the movant…." *Id.* 56.1(a)(2), 56.1(b)(2) (stating the very first word in each paragraph response in opponent's Statement of Material Facts shall be: "disputed" or "undisputed"). An opponent's Statement of

Material Facts also may thereafter assert additional facts that the opponent contends serve to defeat the motion for summary judgment." *Id.* 56.1(a)(2).

Further, Local Rule 56.1 describes what the court may do when a party fails to controvert an undisputed fact and describes consequences of non-compliance. *See* S.D. Fla. L.R. 56.1(c), (d). Under L.R. 56.1(c):

> "All material facts in any party's Statement of Material Facts may be deemed admitted unless controverted by the other party's Statement of Material Facts, provided that: (i) the Court finds that the material fact at issue is supported by properly cited record evidence; and (ii) any exception under Fed. R. Civ. P. 56 does not apply."

S.D. Fla. L.R. 56.1(c).

Notwithstanding, statements in the form of issues or legal conclusions will not be considered. *See Mills v. NCL (Bahamas) Ltd.*, No. 13-24174-CIV, 2015 U.S. Dist. LEXIS 194258, at *6 (S.D. Fla. Apr. 10, 2015).

Local Rule 56.1(d) states that, if a party "files and serves any Statement of Material Facts that does not comply with this rule, then the Court may strike the Statement, require immediate compliance, grant relief to any opposing party for any prejudice arising from a non-compliant statement or response, or enter other sanctions that the Court deems appropriate." *See Partners Biomedical Sols., LLC v. Saltmans*, 2021 U.S. Dist. LEXIS 80301, at *9-10 (S.D. Fla. April 27, 2021).

29

Here, the district court misapplied Local Rule 56.1, or alternatively failed to recognize the consequence of Mr. Joyce's filings and abused its discretion. Each is discussed in turn:

### A. **Misapplication of Local Rule 56.1.**

Local Rule 56.1 permits the district court to deem Mr. Joyce's SOMF admitted only if "the Court finds that the material fact at issue is supported by properly cited record evidence." In this case, the record evidence does not support manufacturers' assertions, and in fact directly contradicts the assertions. Specifically, Freightliner's and Forest River's citations to the record plainly do not support their statements of fact for the following:

- Paragraph 10: the "windshield, back-up camera, headlight, and steering wheel" are attributable only to Forest River. [Doc 58 – Pg. 4].

- Paragraphs 11 and 22: Mr. Joyce did not call or otherwise put Freightliner on notice of any problems with the RV. [Doc 54 – Pg. 2-3].

However, Mr. Joyce believed Forest River, Freightliner, and Lazy Days would coordinate any necessary repairs. [Doc 58-2 – Pg. 206/lines 6-11]. As far as Mr. Joyce knew, there was no distinction between the manufacturer, dealer, and authorized service provider. [Doc 58-2 – Pg. 172/lines 10-19 ("I didn't know Forest River wasn't actually in charge of the whole thing.")]. Both Lazy Days and Forest River told Mr. Joyce that there were certain things that Freightliner had to work on.

[Doc 58-2 – Pg. 51, 73, 77, 86, 162; Doc 58-4 - Pg. 69/lines 18-24]. Without question, Mr. Joyce relied on the statements of individuals at Lazy Days and Forest River. The record reflects that Forest River communicated with Freightliner, [Doc 58-2 Pg. 94, 98, 123], and Freightliner was on notice of the RV's recurring problems [Doc 58-2 – Pg. 77, 86-87, 92]. Mr. Joyce is not required under the statute to report a service call or problem to each manufacturer.

- Paragraph 9: Mr. Joyce continued to drive the RV and safely reached his destination. [Doc 54 – Pg. 2].

- Paragraph 14: the RV's issues prevented Mr. Joyce from driving it. [Doc 58 – Pg. 5].

Rather, the record reflects that Mr. Joyce felt that he had no choice but to drive the RV despite its unsafe nature because Mr. Joyce was assured that "everything would be covered under warranty when we took it to the service dealer." [Doc 58-2 – Pg. 38 ("They tried to figure out what was wrong with it. They never saw anything like that."); Doc 58-2 – Pg. 39 ("[I]t was unsafe, but what choice did we have?")]. Mr. Joyce was informed that even the transport company would not operate the RV with the check engine light on because it was unsafe. [Doc 58-2 – Pg. 87]. Even Mr. Joyce's expert testified that safety concerns render the RV unable to be utilized as intended. [Doc 48 – Pg. 16]. Notwithstanding, a vehicle can have a nonconformity triggering lemon law liability even when it can still be driven. *See Schonscheck v.*

31

*Paccar, Inc.*, 661 N.W.2d 476, 482 (Wist. Ct. App. 2003) ("Although Schonscheck has been able to make twenty-three trips with the truck, the truck has not functioned properly since Schonscheck's first trip."); *see also Chmill v. Friendly Ford-Mercury of Janesville, Inc.*, 424 N.W.2d 747 (Wisc. Ct. App. 1988) (finding substantial impairment of use, value or safety even though vehicle had been driven 78,000 miles with the nonconformity).

- Paragraph 27: Mr. Joyce admitted that the RV had only been seen for repairs at an authorized service dealer for Forest River on two occasions. [Doc 58 – Pg. 7].

This is not supported by the record citation and is incomplete. Mr. Joyce had no knowledge of whether any facility was authorized. [Doc 58-2 – Pg. 112/lines 11-15 (recounting that he did what he was instructed to do)]. The RV has been "out of service" for the duration of Mr. Joyce's ownership except for four or five weeks. [Doc 58-2 – Pg. 120/lines 6-12]. During Mr. Joyce's possession, he was told to bring the RV in for repair but both times two different dealers refused to touch it. [Doc 58-2 – Pg. 132-33]. Regardless, Mr. Joyce testified that the RV was seen at least two more times: once before even leaving the lot, [Doc 58-2 – Pg. 140/lines 1-5 ("We didn't want to drive it off the lot because of the problems on it"); Doc 58-2 – Pg. 42/lines 20-23 ("He was the service technician that stayed after hours to try to figure out what was wrong with the RV, because we didn't want to leave with it")], and

32

again in New Hampshire before taking it to Camping World, [Doc 58-2 – Pg. 20-22 (identifying a local RV person sent by Forest River to deal with the check engine light, microwave falling, slide-out, overheating, etc.)]. Mr. Joyce provided reasonable opportunity to manufacturers to repair the RV. *See Robertson*, 144 Cal. App. 4th at 807-08 (2006) ("[I]t is difficult to believe the Legislature intended to rule out "delivery" of a nonconforming product by other reasonable means, such as where the repair facility agrees to perform the needed repairs at the consumer's residence.)". What is more, Forest River is held accountable for the days the RV was presented to and remained at Freightliner's facility. It is clear from the evidence that the RV was out of service by reason of repair of one or more nonconformities for more than 15 days and that the RV was seen more than two times. By refusing to take advantage of the opportunity or being unable to isolate and make an effort to repair the problem, or conduct further investigation while the RV was simply sitting at a service center, [Doc 48 – Pg. 15-16], are matters for which Mr. Joyce is not responsible.

As shown clearly above, the facts contained in each manufacturers' SOMF were not supported by the record on summary judgment. For this reason alone, the district court abused its discretion in deeming these facts "admitted" for failure to technically comply with Local Rule 56.1.

33

**B**. **Alternatively, the purpose of Local Rule 56.1 was satisfied.**

Furthermore, even assuming that the record provided supported for the purported material facts in manufacturers' SOMF, the district court abused its discretion in deeming the SOMF admitted for several reasons. First, the purpose of Local Rule 56.1 was satisfied even though the *technical form* of Mr. Joyce's initial SOMF was not compliant. Second, Mr. Joyce filed an amended SOMF which complies with the rule and no prejudice occurred to manufacturers. Third, where consumer rights are at issue, the result is unduly harsh, particularly in light of the foregoing reasons.

As applied, this is not a case of a complete failure to controvert undisputed facts. *See BMU, Inc. v. Cumulus Media, Inc.*, 366 Fed. Appx. 47, 49 (11th Cir. 2010) ("Because BMU failed to file a response to Cumulus's statement of undisputed facts, the district court did not err by deeming "all of the facts set forth in [Cumulus's] statement of facts to be admitted."). Rather, Mr. Joyce actually filed his [opponent's] SOMF, but only in partial compliance with the local rule. In effect, Mr. Joyce's SOMF was clearly intended to challenge the facts asserted by manufacturers. Significantly, Mr. Joyce's SOMF was supported with pinpoint citations to record evidence. [Doc 67].

Although Mr. Joyce did not initially file an opponent's SOMF indicating whether facts are disputed or undisputed, Mr. Joyce diligently filed an Amended SOMF

34

challenging purportedly material facts asserted by manufacturers. [Doc 78]. The evidence cited refutes manufacturers' SOMF. Mr. Joyce complied with the purpose and spirit of the local rule. *See Joseph v. Napolitano*, 839 F. Supp. 2d 1324, 1329 (S.D. Fla. 2012) ("As the official comments to Local Rule 56.1 explain, the rule's clear procedural directive is intended to reduce confusion and prevent the Court from having to scour the record and perform time-intensive fact searching.").

Second, and contrary to the district court's conclusion, Mr. Joyce's amended SOMF did not prejudice the manufacturers to discern the factual basis of Mr. Joyce's initial response. Notably, Forest River moved for an extension to reply [Doc 69], and Freightliner replied without issue, [Doc 70]. As such, it is evident that Mr. Joyce's initial SOMF as amended did not force the manufacturers or the court to scour the record to determine the basis of Mr. Joyce's response. There was no adverse consequence for the district court being able to identify and organize the issues in the case. Mr. Joyce also took steps to make correction to the deficiency, and there was no finding that Mr. Joyce's violation was made in bad faith or willful contempt.

Moreover, Mr. Joyce was not provided with an opportunity to explain why his SOMF was not in compliance and why the Court should consider lesser sanctions, other than deeming manufacturers' facts as admitted. *But see Batista v. Avant Assur.*

*Inc.*, 2023 U.S. Dist. LEXIS 117557, at *4 (S.D. Fla. May 22, 2023) (providing Defendants opportunity to correct deficiencies); *Rives v. Lahood*, 605 Fed. Appx. 815, 818 (11th Cir. 2015) (failing to respond even after magistrate judge notified Rives of Local Rule 56.1's requirements). Ordinarily a paper filed in violation of the Local Rules would be stricken and returned, *see Staple v. Northwestern Mut. Life Ins. Co.*, 2019 U.S. Dist. LEXIS 41027, at *5 (M.D. Fla. Jan. 11, 2019); however, the district court did not strike or return Mr. Joyce's opposing SOMF.

Finally, Mr. Joyce submits that the interests of justice were not served by the district court's discretionary action. Instead, it was in the interests of justice and efficient resolution of this matter to permit Mr. Joyce's SOMF. *See Clena Invs. v. Scottsdale Ins. Co.*, 2020 U.S. Dist. LEXIS 231073, at *5-6 (S.D. Fla. Dec. 8, 2020) (finding Plaintiff exhibited contumacious disregard for Court's three orders requiring a response and Statement of Material Facts that comply with Local Rule 56.1); *see also Gold Krown Fund, LLC v. Shapiro*, 2017 U.S. Dist. LEXIS 229363, at *7 (S.D. Fla. Dec. 15, 2017) (permitting filing of a renewed motion for partial summary judgment accompanied by a proper Statement of Material Facts, as required by and in conformity with Local Rule 56.1); *Levey v. Wells Fargo Bank, N.A.*, 2015 U.S. Dist. LEXIS 181510, at *1 (S.D. Fla. Feb. 17, 2015) (summarily denying without prejudice partial summary judgment when each allegedly

"undisputed fact" was unsupported by record reference or supporting exhibit, and authorizing a renewed motion "accompanied by a proper statement of material facts, as required by Local Rule 56.1").

Because of the seriousness of summary judgment being granted by the equivalent of striking Mr. Joyce's SOMF, the manufacturers–in practical effect– "automatically" prevailed. The severe result here undermines the policy and purpose of consumer protections afforded by the remedial Lemon Law and further punishes Mr. Joyce even though the deficiency, later corrected, was a mere technicality and caused no prejudice. Therefore, the district court's ruling must be reversed.

## Conclusion

Mr. Joyce respectfully prays this Honorable Court reverse the district court's order granting manufacturers' motions for summary judgment.

Date: November 7, 2024,

/s/ Patrick S. Cousins
Patrick S. Cousins, Esq.
Florida Bar # 845469
*Attorney for Appellant Kevin Joyce*

Cousins Law, APA
250 S. Australian Ave., Suite 1302
West Palm Beach, Florida 33401
Tel: (561) 835-1727
Email: cuzlaw@yourlemon.com

## Certificate of Compliance

**I HEREBY CERTIFY** that:

### 1. Type-Volume

This document complies with the type-volume limit of FRAP 32(a)(7)(B) because, excluding the parts of the document exempted by FRAP 32(f), this document contains approximately 8,500 words.

### 2. Typeface and Type-Style

This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).

/s/ Patrick S. Cousins
Patrick S. Cousins, Esq.
*Attorney for Appellant Kevin Joyce*

Dated: November 7, 2024

## Certificate of Service

I certify that on November 7, 2024, a true and correct copy of the foregoing has been electronically filed with the Clerk of Court using the Court's CM/ECF system together with transmission of the NDA generated by CM/ECF.

/s/ Patrick S. Cousins
Patrick S. Cousins, Esq.
*Attorney for Appellant Kevin Joyce*

Dated: November 7, 2024

38